The CITY OF COLORADO SPRINGS, Petitioner,

v.

The UNITED STATES of America and The Interstate Commerce Commission, Respondents.

The Denver and Rio Grande Western Railway Company, Intervenor.

Nos. 81–1955, 81–2182.

United States Court of Appeals, Tenth Circuit.

Sept. 1, 1983.

Donald G. Avery, Slover & Loftus, Washington, D.C. (William L. Slover, C. Michael Loftus and Kelvin J. Dowd, Washington, D.C. and Gregory L. Johnson, Horn, Anderson & Johnson, Colorado Springs, Colo., with him on the brief), for petitioner.

Lawrence H. Richmond, I.C.C., Washington, D.C. (William F. Baxter, Asst. Atty. Gen., Robert S. Burk, Acting Gen. Counsel, Kathleen M. Dollar, Associate Gen. Counsel, Washington, D.C. and John J. Powers, III and Kenneth P. Kolson, Attys., Dept. of Justice, Washington, D.C., with him on the briefs), for respondents.

John S. Walker, Jr., Denver, Colo., on brief for intervenor.

Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The City of Colorado Springs seeks review of orders of the Interstate Commerce Commission which have authorized the Denver & Rio Grande Railroad Company to raise its rates based on the filing of tariffs on freight which is wholly intrastate.

The basic conflict results from the attempted exercise of rate making jurisdiction by the Colorado Public Utilities Commission which effort is opposed to the apparent jurisdiction of the Interstate Commerce Commission. The underlying basis for the described conflict is the use by Colorado Springs of a large amount of coal to fuel its wholly owned municipal electric generating system. Almost all of the system's coal is from various mines which are located in northwest Colorado. This coal is transported by the D & RGW to the City's coal-fired generating stations. The Denver & Rio Grande, in delivering this coal, stays within the state of Colorado entirely.

The event which brought about this proceeding was the passage by the United States Congress of the so-called Staggers Act, Public Law No. 96–448, 94 Stat. 1913. This Act became law in October, 1980. Prior to its enactment, the railroads' intrastate transportation services and rates had been subject to regulation by the several states subject to I.C.C. review. However, the Staggers Act abrogated most state jurisdiction over intrastate rates.

The two cases which were consolidated for this appeal involve constructional problems which were precipitated by the transition from a pre to post Staggers Act dispute.

*Case No. 81–1955*

The problem before us originated in about 1980, when several railroads operating in Colorado, including the D & RGW, sought from the Public Utilities Commission permission to implement a four percent general rate increase on their intrastate traffic in Colorado. At that time Colorado Springs protested the proposed increase and the PUC entered an order rejecting it. This action was taken following a hearing which was held in May 1980. Thereafter

the Colorado railroads petitioned the ICC requesting that the PUC's rejection of the four percent increase be vacated. However, before the ICC could act on that petition, Congress enacted the Staggers Act. Thus the matter will turn on the provisions of that Act.

At a hearing before an Administrative Law Judge it was ruled in the initial decision that the enactment of the Staggers Act virtually nullified the Colorado PUC order. It left the railroads free to implement the four percent increase.

The Colorado PUC, supported by Colorado Springs, then filed an administrative appeal from that decision. However, it was affirmed by the ICC Review Board and it is from this final decision that review is sought.

*Case No. 81–2182*

Going back to the period between 1977 and 1979, the ICC approved four general rate increases. The western railroads attempted to apply each of these general increases to Colorado intrastate traffic, but the Colorado PUC blocked this effort. Accordingly, the railroads filed petitions with the ICC which required that each increase be applied with exceptions which resulted in the four increases being not applicable to the Colorado Springs coal movements. In 1980, prior to the passage of the Staggers Act, the D & RGW petitioned the Commission to investigate the remaining rate disparity created by the incomplete application of the four general increases. The ICC was asked to raise the rates on intrastate movements of coal to Colorado Springs by adding the increases approved in the four general increase proceedings.

The Commission acted under the applicable pre-Staggers Act law and instituted the requested investigation. Colorado Springs moved to dismiss the action and in their motion asserted that because D & RGW had not first filed a proposal to increase its rate by the amount of the general increases with the Colorado PUC, the ICC lacked jurisdiction to consider D & RGW's petition for investigation. The Commission denied the

motion to dismiss because it found that the previous filing of each general increase with the Colorado PUC (followed by the PUC's rejection of each increase) constituted compliance with applicable pre-Staggers Act law.

The ALJ found the rates imposed by the Colorado PUC discriminatory and a burden on interstate commerce. The judge ordered D & RGW to apply the four general increases to the rates for intrastate movements of coal to Colorado Springs. Colorado Springs appealed the ALJ's decision to a review board which found that D & RGW's proposed increases involved application of general increases to intrastate rates. The board concluded that Section 214(b)(6) of the Staggers Act had given the ICC exclusive jurisdiction in such cases and it concluded that D & RGW could apply the ICC approved general increases by merely filing a tariff with the ICC.

One of the problems in the solution of this case is the issue raised by Colorado Springs as to whether the rate increase is general or is individual. Colorado Springs' position is that a general rate increase is one which is effective across-the-board; applicable to traffic in general. An individual increase is said to be one proposed for a single movement. Colorado Springs asserts that it is individual and thus intrastate and subject to regulation by the Colorado Public Utilities Commission. Our conclusion is that the rate increase is general. We will consider this dispute in connection with Case No. 81–2182. Respondents define general increases as increases by a substantial number of carriers on a substantial number of commodities or services.

*Entitlement to a Hearing*

We proceed to the more productive question raised in Case No. 81–1955, whether the City of Colorado Springs is entitled to a hearing before a general rate increase could go into effect.

■ Concededly, a hearing would have been appropriate if retroactive application of the Staggers Act were disallowed. Generally, a court must apply the law in effect at the time of its decision. *Bradley v.*

*School Board of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). This general rule favors retroactive application of the Staggers Act. Nonetheless, a law cannot retroactively be applied if to do so would result in manifest injustice or if there is statutory direction or legislative history which is at odds with the application. *Id.; see Iowa Power and Light Co. v. Burlington Northern, Inc.,* 647 F.2d 796, 804–07 (8th Cir.1981), *cert. denied sub nom.,* 455 U.S. 907, 102 S.Ct. 1253, 71 L.Ed.2d 445 (1982).

In the early version of the Staggers Act before the House of Representatives there was included a provision which considered the effect of the Act on pending matters. That section provided:

> Any application, action, or proceeding pending before the Secretary of Transportation, the Interstate Commerce Commission, or any court on the effective date of this Act shall be adjudicated or determined as if this Act had not been enacted.

Staggers Act § 802, H8603, Cong.Rec., September 9, 1980. This provision was dropped by a conference committee and section 706 was substituted for it. This provision, 49 U.S.C. § 10706 note provides:

> In the case of any proposal docketed with a rate bureau prior to the effective date of this Act which is or becomes the subject of an application or proceeding before the Interstate Commerce Commission, such application or proceeding shall be determined as if this Act had not been enacted, and the antitrust immunity provided in section 10706(b) of Title 49, United States Code, resulting from approval of such agreement shall continue in effect.

Pub.L. No. 96–448, § 706, Oct. 14, 1980, 94 Stat. 1965.

The provision above which is designated as a note to § 10706 was interpreted by the Seventh Circuit in *Indianapolis Power and Light Co. v. Interstate Commerce Comm'n.,* 687 F.2d 1098 (7th Cir.1982). That court ruled that section 706 does not mandate the

application of pre-Staggers Act law to all legal issues. According to the Seventh Circuit the pre-Staggers Act law is limited to antitrust issues. Its reasons for so limiting section 706 were *first,* any other reading of 706 (to encompass all legal issues, including antitrust immunity) would render the antitrust clause of section 706 mere surplusage. *Second,* Congress expressly left to the courts the decision whether to apply pre or post-Staggers Act law. *Third,* courts should defer to the superior acumen of the ICC in administering the Act. *Fourth,* section 214(b)(6) of the Staggers Act, 49 U.S.C. § 11501(b)(6), which takes away state jurisdiction over general intrastate rate increases, should be given priority over section 706. *Indianapolis Power & Light, supra,* at 1101–02. The question for us is whether the Seventh Circuit's reading of legislative intent, which is to apply the Staggers Act retroactively as to all legal issues (excepting antitrust immunity), obviates the right of Colorado Springs to a hearing. Arguably, that denial of a hearing constitutes "manifest injustice," the second *Bradley* retroactivity factor.

Conceivably, the retroactive application of the Staggers Act does not close the door as far as remedies are available to Colorado Springs. To be sure, Colorado Springs cannot avail itself of a hearing under pre-Staggers Act § 11501. But there are two other provisions of the Interstate Commerce Act which survived the Staggers amendments and which provide ample opportunity for rate investigations. The first of these is 49 U.S.C. § 10707(a). Under this section, the Commission may begin a proceeding on its own initiative or on complaint of an interested party, to determine whether the proposed rate is reasonable. *Id.* Unfortunately for Colorado Springs, entitlement to a section 10707 hearing is discretionary in the Commission. *Southern Ry. v. Seaboard Allied Milling Corp.,* 442 U.S. 444, 455–56, 99 S.Ct. 2388, 2394–95, 60 L.Ed.2d 1017 (1979).

There is another section of the Interstate Commerce Act, 49 U.S.C. § 11701(b) which entitles persons to initiate proceedings to inquire into the reasonableness of freight rates. It would appear that this provision could properly apply to this situation. However, if the Commission determines that a complaint "does not state reasonable grounds for investigation and action," it may refuse to conduct an investigation.

■ Fairness and justice would seem to dictate that the ICC ought to have conducted a hearing under either of these two sections. It is true that Colorado Springs requested a hearing under a different provision, a provision which, as to our case, was vacated by the Staggers Act. But Colorado Springs *did* request a hearing. Inasmuch as the Commission took it upon itself to apply the Staggers Act (the parties operated under the assumption that the Staggers Act did not apply), and considering that the Commission's decision caused Colorado Springs to lose its right to a hearing under pre-Staggers Act law, we think it constituted manifest injustice for the Commission to deny Colorado Springs a hearing. *See Bradley,* 416 U.S. at 720–21, 94 S.Ct. at 2020–21.

Our holding is that Colorado Springs should have a hearing inasmuch as it was authorized under the pre-Staggers law. On remand, Colorado Springs will presumably assert, among other contentions, that the rate in question is unreasonably high in violation of 49 U.S.C. § 1(5). *Seaboard Allied Milling Corp., supra,* 442 U.S. at 449 n. 4, 99 S.Ct. at 2391 n. 4 (shipper requested commission to exercise its authority under § 10707 to investigate whether rates violated, *inter alia,* 49 U.S.C. § 1(5)). If Colorado Springs prevails after a hearing, it would then be entitled to reimbursement of the freight rates it paid which represented the increase. *Burlington Northern, Inc. v. United States,* 459 U.S. 131, 103 S.Ct. 514, 521, 74 L.Ed.2d 311 (1982). It was there said that when there is a dispute about the appropriate rate, the equities favor allowing the carriers' rate to control pending decision by the Commission.

*Classification of Rates*

We now address ourselves to the second of the consolidated cases, No. 81–2182. The Interstate Commerce Commission had pre-

viously approved four interstate general rate increases. These were subsequently applied to Colorado intrastate traffic with four exceptions. These were for the general intrastate increases as they applied to Colorado Springs and resulted from the following. With respect to one, the Commission dismissed certain Colorado intrastate coal movements from consideration because the railroads had declined to answer interrogatories served on them by Colorado Springs. The other three excepted increases were withdrawn from Commission consideration because of a stipulation between the railroads and Colorado Springs. The result of the four exceptions was that the Commission's orders prescribing application of the previously approved general rate increases to Colorado traffic did not affect rates on the excepted intrastate coal movements to Colorado Springs. Colorado Springs argues that the Commission erred in characterizing No. 81–2182 as involving the intrastate application of general rate increases. Since the increase was not a general increase, says Colorado Springs, the Colorado Public Utilities Commission retained jurisdiction over the proposed increase after passage of the Staggers Act and the Commission's dismissal of Colorado Springs' administrative appeal on mootness grounds was reversible error. Whether the increases were general or specific is the issue here.

Congress enacted the Staggers Rail Act to remedy disparity between interstate and intrastate rail rates brought about by lack of uniform standards plus state regulatory delay. Congress, among other things, took away state jurisdiction over certain aspects of rate regulation including general rate increases. Section 214(b)(6) of the Staggers Act provides:

Notwithstanding any other provision of this subtitle, a State authority may not exercise any jurisdiction over general rate increases under section 10706 of this title. . . .

49 U.S.C. § 11501(b)(6).

Our conclusion is that the Commission was not in error in classifying the increases in question as general. In reaching this conclusion we are mindful that substantial deference is to be accorded to the Commission's construction of the Staggers Act and we should apply the Commission's interpretation unless there are compelling indications that the Commission is in error. *Miller v. Youakim,* 440 U.S. 125, 99 S.Ct. 957, 59 L.Ed.2d 194 (1979); *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

The facts now before us are not unlike those which were presented to the Seventh Circuit in *Indianapolis Power & Light, supra.* There in November 1978 the nation's railroads petitioned the ICC for and received authorization to file a master tariff that would have increased their freight rates generally by 8%. Within Indiana, however, the state agency reduced the increase on intrastate shipments of bituminous coal from 9% to 5%. In July 1979 the railroads likewise sought and received ICC permission to file another 8% increase in national freight rates. Again the state agency held down the increase in intrastate bituminous coal rates from 15.7% to 13.7%. Both the federal authorizations and the state agency rulings holding down the increases were before the Staggers Act was enacted on October 1, 1980.

In early 1981 the eastern railroads sought and obtained ICC permission to file supplements to the 1978 and 1979 tariffs to circumvent the Indiana commission's holding down of rates. The theory was that these tariffs as republished would be general rate increases over which the state regulatory agencies had lost jurisdiction, as of October 1, 1980, as a result of the passage of the Staggers Act Section 214(b)(6). Contemporaneously with the passage of the Staggers Act the railroads sought, and after its effective date, the ICC granted authorization to file another national tariff calling for a 5% general rate increase. This likewise relied on Section 214(b) to insulate this tariff from state agency orders holding down the rates. However, the state agency suspended this tariff, insofar as it applied to intrastate bituminous coal shipments, and the

two previous supplemental increases. In June, 1981, the ICC issued an opinion holding that the state agency lacked the jurisdiction to take this action. Subsequent to this ICC ruling, the state agency invalidated the three increases. The latter two rate increases sought dealt only with shipments of bituminous coal within Indiana and, as in our case, were designed to bring the coal rates into line with the general rates which the ICC had earlier approved. Indianapolis Power and Light argued that these could only be specific increases over which the state had not lost jurisdiction.

The ICC and intervening railroads argued that because the supplemented filings were efforts to reinstate the general increase, they were general as well. The Seventh Circuit found that the ICC's position was more harmonious with Congressional intent in enacting the Staggers Act, i.e., to alleviate disparity between interstate and intrastate rail rates. The Seventh Circuit held:

> [W]here the republished tariffs had been part of general increases approved by the ICC and they were subsequently blocked by the state agency, efforts to round out or implement the approved general increase can themselves be considered general.

*Indianapolis Power & Light, supra,* at 1104.

■ In our case the proposed increases were originally filed with the general increase and, as explained above, dropped out of consideration. The rates in question were the only rates in Colorado that had not yet taken the four previously approved general increases. The railroads desired the Colorado rates to meet the general increase. Based upon Indianapolis Power & Light it must be determined that the Commission did not err in characterizing the proposed increases as general. The rule to adopt the petition of Colorado Springs would attempt to thwart the intent of Congress in enacting the Staggers Act. The Commission, in our opinion, properly dismissed Colorado Springs' administrative appeal as being moot.

■ Another argument that Colorado makes is that the Commission was in error in refusing to require D & RGW to file its individual proposal with the Colorado PUC before seeking relief from the ICC. Inasmuch as this was a general increase and the Staggers Act was applicable, this argument has no merit whatsoever.

The decision of the Interstate Commerce Commission should be and the same is hereby affirmed insofar as it pertains to Case No. 81–2182.

Case No. 81–1955 is remanded to the Commission for further proceedings.

Another argument that Colorado makes is that the Commission was in error in refusing to require D & RGW to file its individual proposal with the Colorado PUC before seeking relief from the ICC. Inasmuch as this was a general increase and the Staggers Act was applicable, this argument has no merit whatsoever.

The decision of the Interstate Commerce Commission should be and the same is hereby affirmed insofar as it pertains to Case No. 81–2182.

Case No. 81–1955 is remanded to the Commission for further proceedings.