**UNITED STATES of America, Plaintiff,**

**v.**

**The ESTATE OF William G. COLE, Defendant.**

**No. G83–1181 CA6.**

United States District Court,
W.D. Michigan, S.D.

May 14, 1985.

Dudley Pearce, Office of the Gen. Counsel, Veteran's Admin., Washington, D.C., Julie Ann Woods, Asst. U.S. Atty., Grand Rapids, Mich., for plaintiff.

James Booth Burr, Jr., Grand Rapids, Mich., for defendant.

## OPINION RE CROSS MOTIONS FOR SUMMARY JUDGMENT

HILLMAN, District Judge.

Plaintiff, the United States of America, brings this action against the estate of William G. Cole for the refund of allegedly wrongfully-paid veteran's disability benefits during a period from April 28, 1977, until February 28, 1981. Richard Cole, the brother of William Cole and conservator of his estate, denies that the Veterans Administration is entitled to any refund and has counterclaimed for disability benefits for the period from March 1, 1981, to May 14, 1981.

William G. Cole is one hundred percent disabled and incapacitated due to a military service related disability. He was hospitalized at Kalamazoo State Hospital from April 28, 1977, until May 14, 1981. This is the only time period with respect to which the payment of veteran's disability benefits is in dispute. Since May 14, 1981, it is undisputed that the expense of William Cole's care has been assumed by the Veterans Administration. Regarding the disputed period, the Government claims that benefits should not have been paid from April 28, 1977, until February 28, 1981, and that the Government is entitled to a refund of $42,635.00 wrongfully paid during that period. On the other hand, the conservator, Richard Cole, claims that William Cole's estate was entitled to those benefits and that their termination during the period from March 1, 1981, until May 14, 1981, the latter being the date when the Veterans Administration assumed the expenses of William Cole's care, was wrongful. On that basis the conservator claims that the Veterans Administration owes the estate of William Cole $2,932.50.

The Government relies on 38 U.S.C. § 3203(b)(1) and (2) in support of its position that William Cole was not entitled to veteran's disability benefits during the period he was hospitalized at Kalamazoo State Hospital. 38 U.S.C. § 3203(b)(1) and (2) provide in pertinent part:

"(b)(1)(A) In any case in which a veteran having neither spouse nor child is being furnished hospital treatment or institutional or domiciliary care without charge or otherwise by the United States, or any political subdivision thereof, is rated by the Veterans' Administration in accordance with regulations as being incompetent by reason of mental illness, and the veteran's estate (excluding the value of the veteran's home unless there is no reasonable likelihood that the veteran will again reside in such home, from any source equals or exceeds $1,500, further payments of pension, compensation, or emergency officers' retirement pay shall not be made until the estate is reduced to $500. (B) The amount which would be payable but for this paragraph shall be paid to the veteran in a lump sum; however, no payment of a lump sum herein authorized shall be made to the veteran until after the expi-

ration of six months following a finding of competency and in the event of the veteran's death before payment of such lump sum no part thereof shall be payable.

(2) ... Paragraph (1) of this subsection shall not prevent the payment, out of any remaining amounts discontinued under that paragraph, on account of any veteran of so much of the veteran's pension, compensation, or retirement pay as equals the amount charged to the veteran for the veteran's current care and maintenance in the institution in which treatment or care is furnished the veteran, but not more than the amount determined by the Administrator to be the proper charge as fixed by any applicable statute or valid administrative regulation."

There is no dispute of fact that William Cole meets the criteria of 38 U.S.C. § 3203(b)(1) for the period in question. He has neither spouse nor child, was receiving care at a state hospital, was incompetent by reason of mental illness and his estate exceeded $1,500.00.[1] However, defendant claims that the Government is not entitled to any refund on two grounds. First, the conservator argues that the Government's claim is barred by the statute of limitations. Second, the conservator contends that because Kalamazoo State Hospital charged the estate of William Cole for his hospitalization, the Veterans Administration remained obligated to pay monthly disability benefits to his estate.

▮ Defendant cites 28 U.S.C. § 2415 as the applicable statute of limitations. Section 2415(b) provides a six-year statute of limitations for actions to recover alleged overpayments of money under Government grant programs. See United States v. Roberts Nursing Home, Inc., 710 F.2d 1275 (7th Cir.1983). The alleged overpayments to the veteran's estate began on April 28, 1977, and this action was commenced on October 12, 1983, approximately

six months beyond the six-year period. However, 28 U.S.C. § 2416(c) provides that the statute of limitations will be tolled during any period when facts material to the right of action are not known by the official of the United States charged with responsibility to act in the circumstances.

According to an affidavit submitted by Gordon H. Clowney, Director of the Veterans Administration Regional Office in Detroit, Michigan, that office first received notice of William G. Cole's hospitalization on March 2, 1981. Clowney's affidavit further states that this was the first opportunity for a Veterans Administration official charged with the responsibility of taking suspend-pay action to determine that because of 38 U.S.C. § 3202(b)(1), payments of disability compensation on behalf of William Cole for that period should not have been made, and to have taken appropriate action. Defendant has not controverted these sworn allegations regarding the Government's knowledge of material facts. Therefore, the statute of limitations was tolled until March 2, 1981, pursuant to 28 U.S.C. § 2416(c). Accordingly, this action, filed on October 12, 1983, was well within the six-year period provided in 28 U.S.C. § 2415(b).

Further, the fact that the Veterans Administration failed to take timely action to terminate William Cole's benefits did not preclude overpayment nor obviate the indebtedness that resulted from the overpayment.

" 'The Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid.' United States v. Wurts, 303 U.S. 414, 415 [58 S.Ct. 637, 638, 82 L.Ed. 932] (1938). It is well established that parties receiving monies from the Government under mistake of fact or law are liable ... to refund them, and that no specific statutory authorization upon which to base a claimed right of set-off or an

---

**1.** The Government claims that as of August, 1982, William Cole's estate was $94,359, which

claim the conservator has not disputed.

affirmative action for recovery of these monies is necessary."

*Disilvestro v. United States*, 405 F.2d 150, 155 (2d Cir.1968), and citations contained therein.

■ The conservator also argues, however, that the veteran's estate is not indebted to the Veterans Administration because the care and maintenance of William Cole at Kalamazoo State Hospital was not "without charge." It is undisputed that the State of Michigan billed the veteran's estate approximately $68,000 for the cost of his care during the relevant time period and his conservator has already paid approximately $38,000 of that debt. The conservator argues that 38 U.S.C. § 3203(b) was not intended to prevent payment of Veterans Administration benefits for a patient who is lawfully obligated to pay for his care in a state hospital.

Immediately prior to the enactment of Pub.L. No. 86–146 (pertinent portions of which are presently found in 38 U.S.C. § 3203(b)), the $1,500.00 limitation applied only to incompetent veterans in Veterans Administration Hospitals. Pub.L. No. 86–146 enlarged the scope of the law to include veterans in other tax supported institutions. S.Rep. No. 344, 86th Cong., 1st Sess., reprinted in 1959 U.S.Cong. & Adm. News, page 2048, *et seq.* The parties agree that the basic purpose of Pub.L. No. 86–146 was to establish advance controls to prevent the accumulation of excessive amounts in the estates of incompetent veterans without dependents, institutionalized at taxpayer expense, so as to reduce the gratuitous Veterans Administration funds available to be inherited by collateral or remote heirs. U.S.Cong. & Adm.News, *supra.* However, the conservator argues that since William Cole's estate was charged for his care and maintenance during the period he was hospitalized at Kalamazoo State Hospital, no excessive accumulation of funds accrued to his estate. Although defendant's argument admittedly has some logical appeal, 38 U.S.C. § 3203 is not in fact interpreted or applied in the manner defendant argues.

First, I note that 38 U.S.C. § 3203(b)(1), by its own terms, is not limited in application to only those situations where the disabled veteran receives care "without charge." The statutory language mandates application of the provision to a situation where the veteran is receiving care at a facility of the United States, or one of its political subdivisions, whether that care is administered "without charge *or otherwise*" (emphasis added).

Second, subsection (2) of 38 U.S.C. § 3203(b) specifically provides that subsection (1) "shall not prevent payments" out of any amount discontinued under subsection (1) equivalent to the amount charged by the tax supported institution in which the veteran is receiving care. It is the position of the Government that Congress was fully aware that many state institutions "charge for the maintenance of the veteran" (1959 U.S.Code Cong. & Adm.News at 2050) and provided discretionary authority for the Veterans Administration to release funds to defray such expenses.

Defendant has relied heavily on a May 20, 1959, letter contained in the statute's legislative history from Sumner G. Whittier, who was then the Administrator of the Veterans Administration, to Hon. Harry F. Byrd, who was then the Chairman of the Committee on Finance. Defendant maintains that this letter supports defendant's interpretation of the legislative intent that benefits should not be suspended pursuant to 38 U.S.C. § 3203(b)(1) when the veteran is domiciled in a government institution which charges for his care. However, I have reviewed the letter and find it consistent with the language of 38 U.S.C. § 3203(b)(1) and (2), as that language has been consistently interpreted and applied by the United States Government. Specifically, the letter discusses the permissive payment to charging institutions out of benefits which would otherwise be discontinued. The provision for this permissive payment is made in 38 U.S.C. § 3203(b)(2). It is apparent from the statutory language that Congress did not intend to preclude the use of Veterans Administration funds

to pay for lawful charges for the care of incompetent veterans in non-Veterans Administration institutions. However, the language of 38 U.S.C. § 3203(b)(2) is clearly permissive and not mandatory.

Section 13.71(b) of Title 38, Code of Federal Regulations provides, in effect, that where payments are discontinued because of the provision of 38 U.S.C. § 3203(b)(1), the Veterans Services Officers (VSO) "may certify the amount to be released ... to pay the cost of the veteran's current care and maintenance." Section 13.74 of 38 C.F.R. contains the guidelines that the VSO are to follow in such cases to determine the amount, if any, to be paid out of the appropriate funds. By the terms of that regulation, if the veteran's estate is $2,500 or more, the hospital care and maintenance charges may be paid out of personal funds of the patient if available; otherwise, the institution must look to the veteran's estate for payment. 38 C.F.R. § 13.74(b) and (c). The VSO may deviate from this criteria only to prevent hardship. 38 C.F.R. § 13.-74(d).

In the instant case, since the veteran's estate exceeded $2,500 at the time the Veterans Administration should have stopped payments under the provisions of 38 U.S.C. § 3203(b)(1), 38 C.F.R. § 13.74 would have prevented the Veterans Administration from making a care and maintenance award to the hospital. There is no indication of hardship justifying deviation under section 13.74(d).

When the language "shall not prevent" of 38 U.S.C. § 3203(b)(2) is considered in light of the stated purpose for the $1,500 limitation, it is clear that the Administrator is given latitude in administering the care and maintenance provision of section 3203(b)(2) to assure that the prevention of the excessive accumulation of estates does not serve to deprive incompetent veterans of the institutional care they need. Plaintiff's exhibit number 1 (the affidavit of Norman C. Paulson, Assistant General Counsel with the Veterans Administration) supports the Government's contention that the Veterans Administration has interpret-

ed and applied subsection (2) as discretionary since the passage of Pub.L. No. 86–146. Courts accord great weight to such agency interpretations. *Miller v. Youakim*, 440 U.S. 125, 144, 99 S.Ct. 957, 968, 59 L.Ed.2d 194 (1979). Defendant does not argue that the regulations were incorrectly applied in this case, e.g., that the veteran's estate did not exceed $2,500, nor that there was hardship present.

In contrast, Congress set by statute, section 3203(b)(1), the amount of the estate limitation which will, if exceeded, result in the cutoff of benefits to an incompetent veteran, without spouse or child, institutionalized in a tax-supported facility. Subsection (1) is couched in mandatory terms and defendant cites to no authority to the contrary. I also note that subsection (1), designed to prevent excessive estate accumulation, also assures that there is not permanent loss of benefits to such veteran should he become competent and remain so for at least six months. In such a case, the veteran is entitled to a lump sum payment of all funds withheld because of the $1,500 provision. 38 U.S.C. § 3203(b)(1).

There is no dispute of fact that the terms of 38 U.S.C. § 3203(b)(1) were met during the relevant time period. Defendant's only defense to the Government's claim that it is entitled to a refund of funds paid to William Cole during the period from April 28, 1977, until March 1, 1981, is the legal argument that the provision is inapplicable when the veteran is charged for his care at a state institution. However, as discussed, that situation is specifically addressed in 38 U.S.C. § 3203(b)(2) and regulations promulgated under that subsection. There is no dispute of fact that the veteran's estate was liable for the state hospital charges under applicable regulations. Accordingly, I find that the Government is entitled to a refund of the $42,635.00 wrongfully or mistakenly paid to the estate of William Cole during the relevant time period. Therefore, for the reasons stated in this opinion, the Government's motion for summary judgment is granted, and defendant's mo-

tion for summary judgment is denied. Each party shall bear its own costs.