Jean ADENS et al.

v.

William P. SAILER et al.

Civ. A. No. 69–2941.

United States District Court,
E. D. Pennsylvania.

May 1, 1970.

**924**

Jonathan M. Stein, Community Legal Services, Philadelphia, Pa., for plaintiffs.

William C. Sennett, Atty. Gen., Joseph P. Work, Deputy Atty. Gen., Harrisburg, Pa., for defendants.

## FINDINGS OF FACT, DISCUSSION, CONCLUSIONS OF LAW, AND ORDER

WOOD, District Judge.

This is a class action challenging a directive issued by the Pennsylvania Department of Public Welfare pursuant to which the Philadelphia County Board of Assistance disburses emergency welfare checks by a centralized mailing procedure rather than making them available on demand to those deemed eligible. Plaintiffs contend first, that the centralized mailing procedure denies them equal protection because welfare recipients in all other counties of Pennsylvania receive emergency checks by in-hand disbursement; and second, that centralized mailing is in violation of the federal Social Security Act and regulations issued thereunder which require that emergency checks be given "forthwith".

In accordance with Rule 65(a) (2) we ordered that trial of the action on the merits be advanced and consolidated with the hearing of the application for a preliminary injunction. Trial on the merits was held on March 3, 1970, and after a review of the record we render the following Findings of Fact, Discussion and Conclusions of Law:

## FINDINGS OF FACT

1. The plaintiffs in this action are Jean Adens, individually, and by her, her minor children, as well as all other residents of Philadelphia County who are eligible claimants for emergency assistance to needy families with children provided for by the Social Security Act of 1935, 42 U.S.C. §§ 603(a) (5) and 606(e) and the Pennsylvania Public Welfare Code, 62 P.S. § 201 *et seq.*

2. Defendants are the Executive Director of the Philadelphia County Board of Assistance, the Secretary of the Department of Public Welfare, and the Governor of the Commonwealth of Pennsylvania, who are public officials charged with administering the aforementioned statutory provisions.

3. Recipients of regular public assistance (as distinguished from emergency assistance) are dependent upon timely receipt of such assistance for meeting the basic necessities of life, including food, clothing, and shelter. (N. T. 59, 82; Answer admitting para. 7 of the Complaint)

4. By regulation the Department of Public Welfare provides for the disbursement of checks from the fund for "emergency assistance to needy families with children" to current recipients of regular assistance whose regular check has not arrived on time, or who have emergency needs and have applied for general assistance but whose eligibility has not yet been determined. (N.T. 101-2; *Cf.* Pennsylvania Public Assistance Manual, Sections 3214, 3631, attached to Document 4)

5. Prior to April 8, 1969, the nine District Offices of the Philadelphia County Board of Assistance, as well as Boards of Assistance in other parts of the state, issued checks for emergency assistance to needy families with children in person as soon as appropriate

forms were filed and processed. (N.T. 77–81)

6. Pursuant to a directive dated April 7, 1969, from the defendant Secretary of Public Welfare to the defendant Executive Director of the Philadelphia County Board of Assistance, the foregoing procedure was altered, in the case of Philadelphia County, to provide for the disbursement of checks for emergency assistance to needy families with children through the mail from a central office. (N.T. 101–2; *Cf.* Exhibit A to Document 2)

7. Plaintiff Jean Adens and her four minor children, who are eligible recipients of assistance, were required to wait over a week for an emergency check to arrive to replace a regular assistance check during November of 1969. (Affidavit of Jean Adens attached to the Motion for Temporary Restraining Order and admitted into evidence) (Document 9)

8. Plaintiff Adens' assistance check due December 4, 1969, did not arrive, and she applied for an emergency check on December 9, 1969. By December 18, 1969, the date of filing of this action, she had not received her emergency check (*Ibid.*). Failure to receive this check caused the Adens family to go without adequate food, clothing, and heating in their home (*Ibid*).

9. Delay from the date of application to the date of receipt of emergency assistance since the institution of centralized disbursement by mail ranged in a number of cases from a week to two weeks. (N.T. 14, 16, 27, 33, 37–8, 49, 54, 61, 65, 67–8)

10. In addition, substantial delay is experienced in many cases after failure to receive a regular assistance check and prior to applying for emergency assistance because applicants are required to wait for up to 5 days after the regular check is due to fill out the application for emergency assistance. (N.T. 61–3; 107–8)

11. Defendants have stipulated that where applicants experience delay in receiving emergency assistance checks, there is undue hardship. (N.T. 56; See also 43–47, 53, 59, 82)[1]

12. Delay in receipt of emergency assistance checks has placed a heavy burden upon private social welfare agencies upon whom recipients call when their check does not arrive. (N.T. 16, 28) The Salvation Army, for example, experienced a 370% increase in requests for emergency food since the April, 1969 directive took effect. This increase is due in substantial part to the delay of the defendants in providing emergency assistance to needy families with children. (N.T. 25–7; Exhibit P–2) As of January 2, 1970, however, because of the burden placed on its operations by delay in receipt of emergency checks, the Salvation Army refuses to aid those whose need arises from delay in disbursement of emergency checks. (N.T. 26–8, Exhibit P–3)

13. Increased demand for emergency checks in Philadelphia in the last year was not due to irregularities in applications but rather to the institution of regional disbursing of regular checks giving rise to greater need for emergency checks and to absolute increases in the total number of public assistance receipts. (N.T. 100–101)

14. The increased demand upon emergency assistance funds, cited by the April, 1969 directive as grounds for the change over to delayed by-mail disbursement of emergency assistance in Philadelphia County was not a problem peculiar to Philadelphia County. (N.T. 99–100)

15. Delays in receipt of emergency assistance in Philadelphia were largely due to misapplication of administrative rules and administrative sloppiness un-

---

1. There is ample evidence that a delay of even several days may well cause serious hardship to needy families with children in that they may lack adequate food, they cannot afford to treat illness properly, they are subject to eviction, and families may break up. (N.T. 13–15, 30–37, 42, 49)

der the mail disbursement procedure which would be avoided by in-hand disbursement on demand. (N.T. 104, 108)

16. No new investigative procedures relating to possible fraudulent applications have been instituted by the Department or local offices since April, 1969, nor are investigations now more lengthy than before April, 1969. (N.T. 89–90)

17. In Delaware County, a one-office operation with an assistance caseload of the same size and group characteristics as a Philadelphia District Office, same-day disbursement in-hand creates no particular administrative problems or abuses. (N.T. 82–3, 86)

## DISCUSSION AND CONCLUSIONS OF LAW

■ We note initially that we have jurisdiction of plaintiff's equal protection claim under the Civil Rights Act, 28 U.S.C. § 1343(3) and (4) and 42 U.S.C. § 1983, and of the claim of incompatibility with the Federal Social Security Act and regulations pursuant to pendent jurisdiction. Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (April 6, 1970); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Also, we reject the defendants' assertion that this action has been rendered moot because the named plaintiff Adens was given her December emergency check pursuant to our temporary restraining order, because we have determined that the issue here is one of importance that is "capable of repetition, yet evading review." Southern Pacific Terminal Co. v. I.C.C., 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911);

United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). Both parties agree that there are approximately 1,000 applications for emergency relief per day and that applicants suffer undue hardship if their check is delayed. Therefore, even though the individual plaintiff Adens may have received her emergency check on one occasion, other plaintiffs of the class which she represents may be affected by similar delays in the future, and in such circumstances it is appropriate for us to hear the case to provide any relief necessary to the entire class. Kelly v. Wyman, 294 F.Supp. 887 (S.D.N.Y.1968); Hawkins v. Board of Control of Florida, 162 F.Supp. 851 (N.D.Fla.1958).[2]

We will consider the statutory question first because if the plaintiffs are correct on this question there is no occasion to reach the constitutional issue. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). A brief review of the statute, regulations and legislative history is a necessary prelude. In the Social Security Act of 1950, primarily in response to complaints that states had established waiting lists in administering their Aid For Dependent Children's (AFDC) programs,[3] Congress provided in 42 U.S.C. § 602(a) (10) that any state plan for aid to needy families with children in order to qualify (and therefore make the state program eligible for federal aid) must provide that such aid "be furnished with reasonable promptness". In 1967, Congress authorized in Sections 603(a) (5) and 606(e) federal payment to the states of 50% of the "payments or care" and 75% of the "services" pro-

2. We think that the instant case is more like Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969) than Hall v. Beals, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1970), upon which the defendants rely heavily. In Hall, the state legislature changed the statute applicable to the named plaintiff as well as the class he represented; here, on the other hand, the state directive on centralized disbursement of emergency checks

remains in force and applicable to both the plaintiff (should she again have emergency needs) and members of the class she represents.

3. State AFDC programs receive matching grants from the federal government if their plan and its administration comports with the Act, 42 U.S.C. § 601 et seq. and regulations promulgated thereunder by the Secretary of Health, Education, and Welfare, 42 U.S.C. § 1302.

vided as temporary emergency assistance to needy families with children pursuant to an approved state plan. In the Senate Report on the Bill, No. 744 (1967) as quoted in 2 U.S.Code Congressional and Administrative News, Vol. II, p. 3002 (1967) the Committee recognized the pressing need for immediate action on assistance applications for temporary emergency aid:

"The committee understands that the process of determining AFDC eligibility and authorizing payments frequently precludes the meeting of emergency needs when a crisis occurs. In the event of eviction, or when utilities are turned off, or when an alcoholic parent leaves children without food, *immediate action is necessary.* * * * The families do not have to be receiving, or eligible upon application to receive, AFDC (although they are generally of the same type), but they must be without any available resources and the payment or service must be necessary in order to meet an *immediate need* that would not otherwise be met. * * *" (Italics ours.)

The secretary has recognized the necessity for prompt action reflected in this report in regulations recently promulgated which require *inter alia* that state plans for emergency assistance in order to qualify must "provide that emergency assistance will be given forthwith." 34 Fed.Reg. 393 (Jan. 10, 1969), 45 C.F.R. Section 233.120(a) (5).

■■■ It is clearly the intent of these statutes and regulations that in view of the crisis nature of the circumstances in which emergency assistance is provided for, such assistance must be furnished immediately and without any undue delay. We think that the present system of centralized mailing of emergency checks utilized by the Department of Public Welfare in Philadelphia is inconsistent with the federal requirement that emergency checks be given to recipients immediately upon determination of eligibility. The state has failed to show that the central mailing system serves any conceivable function other than to delay the payment of funds without which recipients are placed in what the defendants admit is a condition of undue hardship: no money is saved, because recipients are paid ultimately anyway; and it is admitted that no extra investigation is made to detect fraudulent applications under the central mailing system.

Having concluded that the system of central mailing of relief checks is incompatible with the requirements of the federal Social Security Act, we are empowered to grant an injunction against further payment of federal funds to the state assistance program unless the state within a reasonable time develops a plan conforming with federal standards. As the Supreme Court recently stated with regard to a New York plan under § 402 of the Social Security Act:

"New York is, of course, in no way prohibited from using only *state* funds according to whatever plan it chooses, providing it violates no provision of the Constitution. It follows, however, from our conclusion that New York's program is incompatible with § 402, that petitioners are entitled to declaratory relief and an appropriate injunction by the District Court against the payment of *federal* monies according to the new schedules, should the State not develop a conforming plan within a reasonable period of time." Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

Accordingly, we will enter the following order:

## ORDER

And now, this 1st day of May, 1970, in accordance with the foregoing findings of fact and conclusions of law, it is ordered that unless the defendants take steps within 60 days to assure (a) that officials of the Philadelphia County Board of Assistance with authority to approve applications for emergency assistance are present during office hours

at each District Office of the Philadelphia County Board of Assistance; and (b) that applicants be granted emergency checks on demand as soon as their eligibility for emergency relief for families with dependent children is determined, we will issue an injunction against further payment of federal funds to the Pennsylvania Emergency Assistance Fund.