**Joyce BALL et al., Plaintiffs,**

v.

**Patricia HARRIS et al., Defendants.**

**No. C–1–80–275.**

United States District Court,
S. D. Ohio, W. D.

Oct. 1, 1980.

John D. Woliver, Clermont County Legal Aid Society, Batavia, Ohio, for plaintiffs.

Delbert H. Lay, Asst. Pros. Atty., Clermont County Prosecutor, Batavia, Ohio, for defendants Harlan Wolfe and Clermont County Dept. of Welfare.

## MEMORANDUM

HOGAN, Senior District Judge.

The plaintiffs filed this action under 42 U.S.C. § 1983, seeking injunctive and declaratory relief. Jurisdiction was alleged under 28 U.S.C. § 1331, § 1343(3) and § 1343(4). All state claims were included as within this Court's pendent jurisdiction. The complaint alleged the illegal and unconstitutional operation of state and federal welfare emergency assistance programs in Ohio, more specifically, the Family Emergency Assistance (hereinafter FEA) and Adult Emergency Assistance (hereinafter AEA) programs.

The action was proposed as a class action. There are four named plaintiffs: Joyce Ball, Kerrie Ball, David Jackson and Mary Jackson. All are residents of Clermont County, and were denied FEA benefits. This denial is the result of an apparent lack of funds in the Clermont County coffers. The plaintiffs allege that the failure to operate these programs in Clermont Coun-

ty, and the denial of benefits to them as a result, is in violation of the equal protection clause and due process clause of the fifth and fourteenth amendment. The action of the defendants is also alleged to be violative of 42 U.S.C. § 602, et seq., § 606(e)(1), 45 C.F.R. § 233.120, § 205.120, Article II, Section 26 of the Ohio Constitution, Ohio Rev. Code § 5101.16, Ohio Rev.Code § 5113, and Ohio Ad.Code, chapter 5101:1–7. The defendants named in the complaint were: Patricia Harris,[1] Kenneth Creasy,[2] Harlan Wolfe,[3] the Ohio Department of Public Welfare (hereinafter ODPW), and the Clermont County Welfare Department. Ms. Harris was dismissed from the case by order of this Court (Doc. 6).

This case is before us now on a motion to dismiss on behalf of Mr. Creasy and the ODPW. These defendants seek dismissal under Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Plaintiffs have responded to this motion. These same defendants have since sought a protective order under Fed.R.Civ.P. 26(c). The motion for a protective order need not be considered here, inasmuch as our ruling on the motion to dismiss will be dispositive of it. There are two issues before this Court: (1) whether there is subject matter jurisdiction in this district court, and (2) whether the issues presented in this case are moot. We answer both questions in the affirmative, and, therefore, dismiss the action as to Mr. Creasy and the ODPW (hereinafter the state defendants).

### I.

■ The initial question before us is whether subject matter jurisdiction is vested in this court.[4] The plaintiffs alleged jurisdiction under two sections of Title 28: § 1331, § 1343(3) and § 1343(4). The state defendants challenge these jurisdictional allegations. Plaintiffs bear the burden of supporting their allegations of jurisdiction.

**1.** Ms. Harris is the Secretary of the Department of Health and Human Services.

**2.** Mr. Creasy is the Director of the Ohio Department of Public Welfare.

**3.** Mr. Wolfe is the Director of the Clermont County Welfare Department.

See *Thomson v. Gaskill*, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942).

■ Plaintiffs have conceded that the dismissal of Ms. Harris destroys any jurisdictional claim under § 1331. Absent the federal defendant, plaintiffs must illustrate that the amount in controversy is in excess of $10,000. No attempt is made to show this. Therefore, there is no jurisdictional basis for this case under § 1331.

Plaintiffs assert several bases for jurisdiction under § 1343(3) and § 1343(4). This section exists specifically to provide jurisdiction in many 42 U.S.C. § 1983 actions. District courts are granted original jurisdiction under § 1343(3) and § 1343(4), in any civil action authorized by law to be commenced by any person:

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

■ The jurisdictional grant of § 1343(3) and (4) is not co–extensive with the right to seek redress under 42 U.S.C. § 1983. *Cf. Maine v. Thiboutot*, —— U.S. ——, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) and *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). Plaintiffs here seek to base jurisdiction in the violation of the Social Security Act by the defendants. While violation of the Social Security Act provides a right of redress under § 1983, *see Maine v. Thiboutot*, —— U.S. ——, 100 S.Ct. 2502, 65

**4.** It must be remembered that federal district courts are courts of limited jurisdiction. They may hear only cases entrusted to them by a jurisdictional grant by Congress. C. Wright, Law of Federal Courts § 7 (1976).

L.Ed.2d 555 (1980), the Act neither provides for equal rights, nor protects civil rights and, therefore, the jurisdictional grant of § 1343(3) and (4), as to Acts of Congress, are not applicable. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979).

The *Chapman* decision effectively precludes jurisdiction based on statutory grounds in this case. The *Chapman* Court held that the alleged incompatibility of a state welfare regulation and the Social Security Act was, alone, insufficient to grant jurisdiction under § 1343(3) or § 1343(4). Justice Stevens, writing for the majority, noted that § 1343 jurisdiction was dependent upon two points: (1) an action authorized by law, and (2) a deprivation of rights. These rights, secured by an Act of Congress, must be civil rights or involve equal rights. Since the Social Security Act does not secure either of such types of rights, § 1343 jurisdiction failed. The *Chapman* case also foreclosed the use of the Supremacy clause as a constitutional issue to bring state regulations conflicting with a federal statute into § 1343 jurisdiction.

The practical effect of the *Chapman* decision on the instant case is that one of the plaintiffs' constitutional challenges must be found to be at least somewhat meritorious for this Court to have jurisdiction. The *Chapman* decision does not prevent assumption of jurisdiction where a constitutional issue exists. *See McManama v. Lukhard*, 616 F.2d 727 (4th Cir. 1980).

Plaintiffs allege constitutional issues in their complaint. The state defendants counter that these allegations are so insubstantial that they are plainly without merit, and therefore insufficient to confer § 1343(3) jurisdiction, citing *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). The *Hagans* decision is analagous in many ways with the case at bar. The plaintiff in *Hagans* challenged a provision of the New York Code of Rules and Regulations, which allegedly violated the equal protection clause and contravened the Social Security Act. The district court found the constitutional claim sufficient to

confer jurisdiction. The Court of Appeals reversed. The Supreme Court reversed. After noting that the cause created by § 1983 did not confer jurisdiction, but that § 1343(3) could if the constitutional claim was of sufficient substance, Justice White, writing for the Court, reviewed a line of cases stating the rule in many different ways. Jurisdiction does not vest if the constitutional claim is so attenuated and unsubstantial as to be absolutely devoid of merit, *Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579, 24 S.Ct. 553, 557, 48 L.Ed. 795 (1904); wholly insubstantial, *Bailey v. Patterson*, 369 U.S. 31, 33, 82 S.Ct. 549, 550, 7 L.Ed.2d 512 (1962); obviously frivolous, *Hannis Distilling Co. v. Baltimore*, 216 U.S. 285, 288, 30 S.Ct. 326, 327, 54 L.Ed. 482 (1910); plainly insubstantial, *Levering and Garrigues Co. v. Morrin*, 289 U.S. 103, 105, 53 S.Ct. 549, 550, 77 L.Ed. 1062 (1933); no longer open to discussion, *McGilvra v. Ross*, 215 U.S. 70, 80, 30 S.Ct. 27, 31, 54 L.Ed. 95 (1909); either obviously without merit or its unsoundness so clearly results from previous decisions of this court as to foreclose the subject, *Ex parte Poresky*, 290 U.S. 30, 31–32, 54 S.Ct. 314, 78 L.Ed. 152 (1933). Justice White stated that while the Court of Appeals may have properly reasoned as to the propriety of the challenged provision under the equal protection clause, it was not immediately obvious or so very plain as to be insubstantial.

The rule of substantiality has been stated in many ways, as previously indicated. When distilled, the doctrine states that the constitutional issue cannot be insubstantial. A more descriptive analysis indicates that insubstantiality exists if: (1) the constitutional claim is obviously without merit or (2) the claim is rendered frivolous by previous decisions. *See Sims v. Waln*, 536 F.2d 686 (6th Cir. 1976) *cert. den.* 431 U.S. 903, 97 S.Ct. 1693, 52 L.Ed.2d 386 (1977).

Defendants argue that *Benton v. Rhodes*, 586 F.2d 1 (6th Cir. 1978) *cert. den. sub nom. Wisebaker v. Rhodes*, 440 U.S. 973, 99 S.Ct. 1539, 59 L.Ed.2d 791 (1979) and *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) are dispositive

of the plaintiffs' constitutional claims in the present case. While this Court would be amenable to the assertion that the *Benton* decision goes a long way in emasculating the due process claim here, there is nothing in either case that very plainly invalidates plaintiffs' equal protection challenge. Equal protection was not at issue in the *Benton* case, and such analysis was not foreclosed by the *Dandridge* decision. The *Dandridge* Court had no intention to suspend the operation of the equal protection clause in the field of social welfare law. *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Courts have frequently reviewed social welfare cases on the basis of equal protection challenges. *See Miller v. Youakim*, 440 U.S. 125, 99 S.Ct. 957, 59 L.Ed.2d 194 (1979); *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Brown v. Stanton*, 617 F.2d 1224, 1226, n. 1 (7th Cir. 1980); *Oldham v. Ehrlich*, 617 F.2d 163 (8th Cir. 1980); *Becker v. Toia*, 439 F.Supp. 324 (S.D.N.Y. 1977).

The allegation of the deprivation of a constitutional right has been made in this case. This would trigger § 1343(3) jurisdiction. A detailed analysis of that claim might prove it to be without merit, but we cannot undertake such a detailed analysis in determining this jurisdictional issue. *See Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). The claim here is neither obviously without merit, nor foreclosed by prior decision. Therefore, subject matter jurisdiction is conferred upon this Court by § 1343(3).

The obvious offspring of this conclusion is that we also possess subject matter jurisdiction over all the alleged statutory claims, both federal and state. *See Miller v. Youakim*, 440 U.S. 125, 132, n. 13, 99 S.Ct. 957, 59 L.Ed.2d 194 (1979); *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Becker v. Toia*, 439 F.Supp. 324 (S.D.N.Y.1977). This result is not affected

by the decision in *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). *See Oldham v. Ehrlich*, 617 F.2d 163 (8th Cir. 1980).

### II.

The second issue before us is presented by a Rule 12(b)(6) motion to dismiss on the basis of mootness. This case was filed on May 21, 1980. The monetary problem causing the controversy here is, apparently, no longer in existence.[5] The state defendants argue that this renders the case moot. Plaintiffs assert that the state defendants' admission that this might occur again places this case within the exception to the mootness doctrine.

Rule 12(b)(6) motions are not favored. In deciding this issue, we must construe the allegations of the complaint in a manner favorable to the plaintiffs and can only dismiss if it appears beyond doubt that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

The creation of federal courts by Congress was sanctioned by the Constitution. U.S.Const., Art. III. In Section 2, Article III, the judicial power was limited to "cases" and "controversies." The logical result of that language is the doctrine of mootness. A matter is moot once it has been resolved and thus the accompanying case or controversy is destroyed. *Cf.* C. Wright, Law of Federal Courts, § 12 (1976). Absent clarification, the instant case would be moot. The Supreme Court has, however, found it necessary to create an exception to the mootness doctrine where a case is "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). The plaintiff here must show either that the unnamed class members will continue to

---

**5.** The plaintiffs are seemingly willing to concede that full funding resumed in July, 1980, thereby paving the factual path for determination of this issue (Doc. 11, p. 6). Even if this were not true, we could rely on the affidavit of Vijay K. Jain and consider this as a motion for summary judgment under Fed.R.Civ.P. 56. *See Dayco Corp. v. Goodyear Tire and Rubber Co.*, 523 F.2d 389 (6th Cir. 1975).

suffer in spite of disposition as to the named class members, *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), or that the problem can be reasonably expected to reoccur, *Weinstein v. Bradford*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975).

In asserting that the issue here is "capable of repetition, yet evading review," plaintiffs rely principally on the decision in *Adens v. Sailer*, 312 F.Supp. 923 (E.D.Pa. 1970). Such reliance is misplaced. In the *Adens* case, the technique of disbursing welfare checks was changed. This resulted in a delay in the reception of the checks. The plaintiff in *Adens* received the check one week late. The district court held that such receipt did not moot the case. The policy in *Adens* was an ongoing policy which resulted in delay. The policy in the instant case is not an ongoing policy which will certainly affect other members of the proposed class, but rather a short term condition now resolved as to all members of the class.

Reliance is also placed on five Supreme Court decisions. In each case, the fact pattern is dissimilar to the facts present before this Court. In both *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911) and *Carroll v. Princess Anne*, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968), the Court was concerned that the order issued below would be the basis of future proceedings. No such problem exists in the present case. In *Moore v. Olgilvie*, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969), an Illinois election statute requiring 25,000 signatures including 200 from each of 50 counties to be placed on the ballot was challenged. Before review by the Court, the election passed, but the issue was held to be "capable of repetition, yet evading review." The policy challenged was an ongoing policy, vested in a state statute. No such ongoing policy appears in this case. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) is inappropriate to support plaintiffs' argument for the same reasons. *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), supports the plaintiffs in some aspects of their case, but is factually distinguishable from the instant case. In *Sosna*, the plaintiff challenged a state residency requirement prior to filing a divorce. By the time the case reached the Supreme Court, plaintiff had surpassed the time requirement and acquired a divorce. Justice Rehnquist, writing for the majority, stated that if the plaintiff were suing only on her own behalf, the case would be moot, but that the class aspect of the suit required review. The crux of the *Sosna* decision is that the controversy remained alive as to the other class members. In the case at bar, the controversy appears to have been rendered inactive as to all class members.

The *Sosna* decision, while granting the exception to the mootness doctrine, is supportive of denying the exception in the instant case. A later class action case supports such a decision. In *Kremens v. Bartley*, 431 U.S. 119, 97 S.Ct. 1709, 52 L.Ed.2d 184 (1977), the Court declared moot a due process challenge to a voluntary commitment statute in Pennsylvania. A subsequent repeal of the statute and enactment of a replacement so fragmented the class as to destroy the case or controversy. While factually distinguishable, the bell of *Kremens* rings clearly. It tells that the *Sosna* logic can be employed only when the named plaintiff's departure leaves the remainder of the class basically the same. The action which allegedly moots this case not only does not leave the class the same, but in fact destroys the entire class.

The plaintiffs argue that even if the present controversy is dead, the possibility of future controversy is not. Plaintiffs argue that this same problem could occur in the future. This naked assertion is not sufficient to create a reasonable expectation of future denials based on shortage of funds. *See Illinois Elections Board v. Socialist Workers Party*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); *Golden v. Zwickler*, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). The *Illinois Elections Board* case is particularly instructive here. In that case, a controversy arose as to an

election statute. During the course of litigation, the Chicago Board of Elections settled several issues with the plaintiffs. The State Board sought to vacate these, but Justice Marshall, writing for the Court, found these claims to be moot.[6] The rationale for not applying the exception was that there was no evidence that the Chicago Board would repeat its purportedly unauthorized actions in subsequent elections. Justice Marshall saw no policy or consistent pattern of behavior, or statutory prescription. We see no evidence of these indicia of future actions in the case at hand.

Since the class asserted by the plaintiffs is, at best, fragmented and, at worst, destroyed by the state defendants' actions, and there is no evidence to support reasonable expectation of recurrence of this controversy, the exception to the mootness doctrine sought by the plaintiffs would be inappropriate. Therefore, there is no case or controversy before this Court, and the complaint should be dismissed as to the state defendants.

---

**6.** The case was heard by the Court well after the election had occurred.