Claudie COOK, et al., Plaintiffs,

v.

Patricia BARRY, et al., Defendants.

No. C–1–89–0066.

United States District Court,
S.D. Ohio, W.D.

July 27, 1989.

Janet Pecquet, Findlay, Ohio, Bill Hambley, Cincinnati, Ohio, for plaintiffs.

Thomas Deye, Cincinnati, Ohio, Michael Powell, Lebanon, Ohio, Karen Lazorishak and Alan Schwepe, Columbus, Ohio, for defendants.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court on a motion to dismiss or, in the alternative, for summary judgment filed by defendants Ohio Department of Human Services (ODHS) and Patricia Barry, Director of ODHS (Doc. No. 8) and a motion for judgment on the pleadings, motion to dismiss and motion for summary judgment filed by defendants Warren County, Ohio Department of Human Services (WCDHS), Susan Wilson, C. Michael Kilburn, O.H. Egleston, and George Terwilleger (WCDHS defendants) (Doc. No. 18). Plaintiffs have filed opposing memoranda (Doc. Nos. 13 and 22), to which defendants have replied (Doc. Nos. 17 and 31). For the reasons set forth below, defendants' motions are GRANTED in part and DENIED in part.

## CLAIMS OF THE PARTIES

The following facts are not in dispute: Plaintiffs Claudie Cook, Iona Snider and Morrow Snider are elderly residents of nursing homes in Hamilton County, Ohio and Warren County, Ohio. Cook applied for Ohio Medicaid benefits in January, 1988 with the Hamilton County Department of Human Services (HCDHS). The Sniders applied for such benefits in September, 1987 with the WCDHS. Plaintiffs made the applications through relatives, who thereby became plaintiffs' authorized representatives. Plaintiffs' authorized representatives did not furnish necessary information to establish eligibility for Medicaid benefits, and plaintiffs' applications were denied.

Plaintiffs subsequently filed new Medicaid applications, which were approved. Plaintiff Cook owes the nursing home where she resides approximately $10,000 for the period for which Medicaid benefits were denied. The Sniders owe the nursing home where they reside approximately $23,000.

Plaintiffs claim that they were unable to complete the applications filed in January, 1988 and September, 1987 without the assistance of the HCDHS or WCDHS because of various disabilities from which they suffer. Plaintiffs allege that their authorized representatives did not cooperate in establishing plaintiffs' Medicaid eligibility and defendants failed to render plaintiffs necessary assistance in establishing same.

Plaintiffs present the following claims based on these allegations: (1) defendants' policy of holding handicapped nursing home residents who apply for Medicaid benefits responsible for their authorized representatives' omissions, which policy is embodied in Ohio Public Assistance Manual (OPAM) § 1014.1, violates § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; (2) OPAM § 1014.1 violates §§ 1902(a)(8) and (19) of the Social Security Act, 42 U.S.C. §§ 1396a(a)(8) and (19); (3)

defendants' policy under § 1014.1 of failing to provide written notice of Medicaid eligibility determinations to handicapped nursing home Medicaid applicants or recipients who have appointed authorized representatives violates 42 U.S.C. § 1396(a)(8) and 42 C.F.R. § 435.912 and the Due Process Clause of the Fourteenth Amendment; (4) OPAM § 1014.1, on its face and as applied, violates the Equal Protection Clause of the Fourteenth Amendment; (5) defendants' policy of holding plaintiffs liable for omissions of their authorized representatives violates the Due Process Clause; and (6) defendants violated the Social Security Act, § 504, and the Due Process and Equal Protection Clauses by applying OPAM § 1014.1 in a manner that denied plaintiffs assistance with the Medicaid application process solely on the basis of plaintiffs' handicaps, for which violations defendants are liable under 42 U.S.C. § 1983.

Plaintiffs seek to have the Court enjoin defendants from further implementing OPAM § 1014.1; grant a declaratory judgment that OPAM § 1014.1 violates the Social Security Act, § 504, and the Equal Protection and Due Process Clauses; order defendants to establish an application procedure which assists plaintiffs in the Medicaid application process to assure they receive all Medicaid benefits to which they are entitled; and order defendants to reopen plaintiffs' denied applications and provide plaintiffs assistance in securing benefits.

Defendants move to dismiss the complaint or, in the alternative, for summary judgment on the grounds that: (1) this Court lacks subject matter jurisdiction over plaintiffs' claims of violations of the Social Security Act; (2) plaintiffs' claims are barred by the Eleventh Amendment; (3) plaintiffs have failed to exhaust their administrative remedies; (4) plaintiffs are not entitled to declaratory judgment; and (5) defendants have complied with all relevant constitutional and statutory provisions. Additionally, the WCDHS defendants contend that they cannot be held liable for complying with the challenged provisions of Ohio law in their administration of the Medicaid program.

## CLASS CERTIFICATION

■ Plaintiffs seek to have this action certified as a class action with the class consisting of all nursing home residents who have applied for or received Medicaid benefits but have been denied full participation in the Ohio Medicaid program solely because of defendants' application of § 1014.1. Without expressing an opinion on whether the requirements of Rule 23 have been met, the Court holds that class certification is inappropriate in this case. If granted, the declaratory and injunctive relief requested by plaintiffs would automatically accrue to the benefit of others similarly situated. Therefore, "no useful purpose would be served by permitting this case to proceed as a class action." *Craft v. Memphis Light, Gas and Water Division,* 534 F.2d 684, 686 (6th Cir.1976), *aff'd,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); *Elam v. Barry,* 656 F.Supp. 140 (S.D.Ohio 1986), *reversed on other grounds,* 841 F.2d 1297 (6th Cir.1988). Accordingly, plaintiffs' motion for class certification is hereby DENIED.

## SUMMARY JUDGMENT

The summary judgment procedure under Federal Rule of Civil Procedure 56 is designed to secure a just, speedy, and inexpensive determination of any action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). However, Rule 56(c) permits the Court to grant summary judgment as a matter of law *only* after the moving party has identified as the basis of its motion "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" which demonstrate the absence of any genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (*quoting First National*

*Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14 (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)). The function of the court is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510 (*citing Cities Service,* 391 U.S. at 288–289, 88 S.Ct. at 1592). If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) or is not significantly probative, *Cities Service,* 391 U.S. at 290, 88 S.Ct. at 1593, judgment may be granted. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

Fed.R.Civ.P. 12(b) and (c) provide that if matters outside the pleadings are presented to and not excluded by the Court in connection with a Rule 12(b)(6) motion to dismiss or 12(c) motion for judgment on the pleadings, respectively, the motion shall be treated as one for summary judgment. Defendants have submitted affidavits and other documents in support of their motions. Therefore, the motions shall be treated as motions for summary judgment.

## SUBJECT MATTER JURISDICTION

Defendants contend that this Court does not have subject matter jurisdiction over plaintiffs' claims of violations of the Social Security Act. When a constitutional claim presented in a complaint is of sufficient substance to support the exercise of federal jurisdiction, the Court has the power to consider other claims that may not confer jurisdiction if the constitutional claim is not obviously without merit or is not rendered frivolous by previous decisions. *Ball v. Harris,* 498 F.Supp. 110, 113 (S.D.Ohio 1980) (Hogan, Sr. J.). Plaintiffs have raised other federal statutory and constitutional claims that are neither obviously without merit nor rendered frivolous by previous decisions. Such claims are sufficient to confer jurisdiction over plaintiffs' remaining claims.

Furthermore, one of the asserted jurisdictional bases of plaintiffs' claims is 42 U.S.C. § 1983. Section 1983 encompasses claimed violations of the Social Security Act. *Maine v. Thiboutout,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Ball v. Harris,* 498 F.Supp. at 112. Therefore, this Court has subject matter jurisdiction over plaintiffs' claims.

## ELEVENTH AMENDMENT

The Eleventh Amendment bars an action for damages that seeks a retroactive award requiring the payment of funds from the state treasury. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The Eleventh Amendment does not bar the federal court from enjoining state officials to conform their future conduct to requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

Insofar as plaintiffs seek declaratory judgment with respect to continuing violations of federal law and constitutional provisions, their claims are not barred by the Eleventh Amendment under *Quern.* Furthermore, Congress has abolished immunity for states under the Eleventh Amendment:

> for a violation of Section 794 of Title 29, ... Title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d et seq.], or the provisions of any other federal statute prohibiting discrimination by recipients of federal financial assistance. 42 U.S.C. § 2000d–7(a)(1).

Section 2000d–7(a)(1) applies to violations that occur after October 21, 1986. Plaintiffs applied for and were denied Medicaid benefits subsequent to that date. Accordingly, defendants are not immune from suit under the Eleventh Amendment for plaintiffs' claims under 29 U.S.C. § 794.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES/ABSTENTION

■ As a general rule, a litigant must exhaust administrative remedies before bringing a civil suit in federal court. *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1092 (6th Cir.1981). However, exhaustion of state administrative remedies is not a prerequisite to bringing an action under 42 U.S.C. § 1983. *Patsy v. Board of Regents of the State of Florida*, 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982); *Wilkerson v. Johnson*, 699 F.2d 325, 329 (6th Cir.1983). Therefore, plaintiffs need not exhaust any administrative remedies that may be available to them under Ohio law with respect to their § 1983 claims.

■ Assuming, *arguendo*, that plaintiffs are required to exhaust their state remedies with respect to their § 504 claims, it appears that plaintiffs may not have any state remedies available to them. Ohio Revised Code § 5101.35(E) grants an appellant who disagrees with an administrative appeal decision the right to appeal the decision to the Court of Common Pleas. An appellant is an individual who is entitled by federal or state law to a hearing regarding a decision or order of various state or county departments. O.R.C. § 5101.35(A)(1). State authorities in plaintiffs' cases found that they were not entitled to hearings concerning the denial of benefits to them. Plaintiffs allege that this is so because their authorized representatives failed to timely request hearings on their behalf. Because plaintiffs' hearing requests were denied, it is questionable whether judicial review under § 5101.35 is available to them. Therefore, the Court cannot conclude that plaintiffs have failed to exhaust available state remedies.

■ In the alternative, defendants contend that the Court should abstain from adjudicating plaintiffs' claims under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Younger* and its progeny hold that a federal court should not enjoin a pending state criminal or civil proceeding in which important state interests are involved, absent unusual circumstances. *Id.; Ohio Civil Rights Commission v. Dayton Christian Schools*, 477 U.S. 619, 626–27, 106 S.Ct. 2718, 2722, 91 L.Ed.2d 512 (1986). It is the form of relief requested that triggers a *Younger* inquiry. *Lamb Enters, Inc. v. Kiroff*, 549 F.2d 1052, 1057 (6th Cir.), *cert. denied*, 431 U.S. 968, 97 S.Ct. 2926, 53 L.Ed.2d 1064 (1977).

State proceedings are not pending in this matter. Nor have plaintiffs requested an injunction of state litigation. Therefore, *Younger* has no application to this matter. The Court finds no basis for abstaining from adjudicating plaintiffs' claims.

## DECLARATORY JUDGMENT

■ Title 28 U.S.C. § 2201(a) provides, in pertinent part:

In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal declaration, whether or not further relief is or could be sought.

The Court may entertain a declaratory judgment action in its discretion. *Grand T.W.R. Co. v. Consolidated R. Corp.*, 746 F.2d 323, 326 (6th Cir.1984). The factors to consider are (1) whether the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) whether the judgment will resolve the uncertainty and controversy giving rise to the proceeding. *Id.* at 326. A declaratory judgment in this matter would satisfy both of these criteria. Accordingly, the Court exercises its discretion to entertain this action.

## THE SOCIAL SECURITY ACT

The Medicaid program, established in 1965 as Title XIX of the Social Security Act, 79 Stat. 343, as amended 42 U.S.C. § 1396 *et seq.*, is a co-operative federal/state cost-sharing program "providing federal financial assistance to states that choose to reimburse certain costs of medical treatment for needy persons". *Harris v. McRae*, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). Each participating state develops a plan containing "reasonable standards for determining eli-

gibility for and the extent of medical assistance". 42 U.S.C. § 1396a(a)(17). An individual is entitled to Medicaid if he fulfills the criteria established by the state in which he lives. *Schweiker v. Gray Panthers*, 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981).

Ohio has elected to participate in the Medicaid program. The state receives federal funds from the United States Department of Health and Human Services for its participation. In return, the state must comply with applicable federal statutes and regulations in the administration of the program. Such statutes and regulations require a participating state to operate its Medicaid program in a manner consistent with the objectives of the program. 42 U.S.C. § 1396d(a)(17). These objectives are to provide "medical assistance on behalf of ... aged, blind or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services ..." 42 U.S.C. § 1396. Methods for determining Medicaid eligibility must be consistent with rights secured by the United States Constitution, the Social Security Act, Title VI of the Civil Rights Act of 1973, and other relevant provisions of federal and state law. 42 C.F.R. § 435.902.

A participating state must provide all individuals who wish to apply for Medicaid benefits an opportunity to do so and must furnish benefits to all eligible individuals with reasonable promptness. 42 U.S.C. § 1396a(a)(8). A participating state must also provide such safeguards as are

> necessary to assure that eligibility for care and services under the plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the best interests of the recipients.

42 U.S.C. § 1396a(a)(19). Title 42 C.F.R. § 433.912 requires the state to send each applicant a written notice of a decision on his application and of his right to request a hearing in the event of a denial.

OPAM § 1014.1 is an interpretation of Ohio Administrative Code (OAC) § 5101:1–2–051, which applies to the Ohio

Medicaid program. Both provisions define an authorized representative as an individual eighteen years of age or older who stands in place of the Medicaid applicant/recipient. As a general rule, an applicant must provide in writing the name of his authorized representative and any duties which the representative may perform on the applicant's behalf. OAC § 5101:1–2–051(C). If written authorization cannot be obtained because the applicant is incompetent or incapacitated, the County Department of Human Services may waive a written statement and assist in naming a responsible party as the authorized representative. *Id.* Where an individual is a resident of a nursing home, the person supplying information on the resident's behalf is an authorized representative. OAC § 5101:1–2–051(D); OPAM § 1014.1. The authorized representative signs the application form and receives notices on the applicant's behalf. *Id.*

Plaintiffs claim that OPAM § 1014.1 violates the Social Security Act and its implementing regulations because (1) it requires that eligibility notices be sent only to authorized representatives of applicants rather than applicants themselves and (2) it allows the state to hold applicants liable for the representatives' omissions. In determining whether OPAM § 1014.1 violates the Social Security Act, the issue is whether that provision is consistent with the United States Congress' objective in enacting Title XIX. See *Morgan v. Cohen*, 665 F.Supp. 1164, 1177 (E.D.Pa.1987); *White v. Beal*, 555 F.2d 1146 (3d Cir.1977); *Roe v. Casey*, 623 F.2d 829, 840 (3d Cir.1980). Medicaid services must be distributed in a manner which bears a rational relationship to this objective. *White*, 555 F.2d at 1151.

On its face, OPAM § 1014.1 does not violate the Social Security Act by impeding the objective of providing needed medical assistance to individuals. In many cases, allowing a representative to submit an application for Medicaid benefits on the applicant's behalf may afford an individual an opportunity to obtain benefits that he might not otherwise have. Nonetheless, implementation of a policy whereby an ap-

plicant is bound by the omissions of an authorized representative who is appointed without the applicant's approval does not appear to serve the objectives of the Social Security Act. To the contrary, this policy may hinder an applicant in obtaining benefits to which he may be entitled and may preclude the applicant from securing needed assistance in establishing eligibility for such benefits.

 Further, that provision of OPAM § 1014.1 which requires notice of a decision on an application and of the applicant's right to request a hearing be given only to an authorized representative is in apparent conflict with 42 C.F.R. § 453.912, which requires that such notice be given an applicant. This provision also implicates plaintiffs' procedural due process rights. Defendants allege that they have complied with the notice requirements of § 435.912 through O.A.C. § 5101:1–35–02, which requires that notice of a right to administrative hearing be served on an applicant *and* his authorized representative, if he has one. However, this is a disputed matter. Accordingly, defendants are not entitled to summary judgment on plaintiffs' claims that OPAM § 1014.1 violates the Social Security Act and deprives them of their procedural due process rights, and that defendants have not provided them with the notice required under § 435.912.

## § 504 OF THE REHABILITATION ACT

Section 504 provides, in pertinent part, that:

No otherwise qualified individual with handicaps in the United States ... shall, solely by reason of his or her handicap, be excluded from the participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

 In order to state a claim under § 504, a claimant must allege that:

(1) he is a handicapped individual as defined in the statute;

(2) he is otherwise qualified to participate in the program or activity at issue;

(3) he has been excluded from the program or activity solely by reason of his handicap; and

(4) the program or activity received federal financial assistance.

*Henning v. Village of Mayfield Village,* 610 F.Supp. 17 (N.D.Ohio 1985); *Doe v. New York University,* 666 F.2d 761 (2d Cir.1981); *Strathie v. Department of Transportation,* 716 F.2d 227 (3d Cir.1983).

Title 29 U.S.C. § 706(8)(B) defines an "individual with handicaps" as any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment. Defendants concede that whether an individual is handicapped or "otherwise qualified" are questions of fact.

The Court must assume for purposes of this opinion that plaintiffs are handicapped as that term is defined in § 706(8)(B) and are "otherwise qualified" to participate in the Medicaid program. The Ohio Medicaid program receives federal financial assistance. Thus, the only issue under § 504 is whether plaintiffs have been excluded from receiving Medicaid benefits by virtue of their handicaps.

 OPAM § 1014.1 does not, by its terms, preclude handicapped individuals from obtaining Medicaid benefits or mandate different treatment for handicapped individuals. Nonetheless, plaintiffs may be able to prove that OPAM § 1014.1 as applied to them violates § 504. Plaintiffs allege that they were unable to complete Medicaid applications and furnish eligibility information because of their handicaps. If plaintiffs were eligible for Medicaid benefits in connection with their initial applications, but were denied same because of actions based on plaintiffs' handicaps, plaintiffs may prevail on their claims that they were denied Medicaid benefits solely by reason of their handicaps. Therefore, defendants are not entitled to summary judgment on plaintiffs' § 504 claims.

## EQUAL PROTECTION CLAUSE

■ Plaintiffs allege that OPAM § 1014.1 violates the Equal Protection Clause of the Fourteenth Amendment by creating two classes of Medicaid applicants: (1) nursing home residents and handicapped individuals, and (2) all other Medicaid applicants. Plaintiffs claim that the statute discriminates against the former group by holding them responsible for their authorized representatives' actions without the applicants' written consent, while requiring written authorization from the latter group in order to impute responsibility to a representative. Plaintiffs claim that there is no rational basis for this distinction.

The Equal Protection Clause requires that states treat all similarly-situated persons alike. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). An essential element of an equal protection claim is that an individual has been discriminated against because of his membership in a certain group. *Joyce v. Mavromatis*, 783 F.2d 56, 57 (6th Cir.1986). Thus, the challenged legislation must distinguish between classes of individuals. See *White v. Gilligan*, 351 F.Supp. 1012, 1014 (S.D.Ohio 1972). If the classification does not involve a fundamental right or suspect class, the classification need only withstand scrutiny under a rational basis test. *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Under that test, the statute must have a legitimate purpose and it must be reasonable to believe that the classifications drawn under the statute would serve that purpose. See *White*, 351 F.Supp. 1012; *Western & Southern Life Insurance Co. v. Bd. of Equalization*, 451 U.S. 648, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981).

Defendants allege that plaintiffs have not been discriminated against since OAC § 5101:1–2–04 applies to all Medicaid applicants. However, defendants have not addressed plaintiffs' claim that OPAM § 1014.1 violates the Equal Protection Clause. Accordingly, defendants are not entitled to summary judgment on plaintiffs' equal protection claim.

## SUBSTANTIVE DUE PROCESS

■ An individual may prevail on a substantive due process claim if he proves either (1) a violation of some specific guarantee of the Constitution apart from the due process clause, or (2) an official act that "shocks the conscience". *Wilson v. Beebe*, 770 F.2d 578, 586 (6th Cir.1985). Plaintiffs' allegations that defendants' policy imputes vicarious liability to them for their authorized representatives' omissions satisfy neither of these criteria. Although plaintiffs cite several cases for the proposition that holding an individual liable for the acts or omissions of another violates substantive due process, those cases are inapposite. See *Elfbrandt v. Russell*, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966); *Scales v. U.S.*, 367 U.S. 203, 220, 225–26, 81 S.Ct. 1469, 1481, 1484–85, 6 L.Ed.2d 782 (1961); *St. Ann v. Palisi*, 495 F.2d 423 (5th Cir.1974). They involve either a specific constitutional right or the imposition of punishment or criminal liability in the absence of personal guilt. Because plaintiffs' claims involve neither, defendants are entitled to summary judgment on plaintiffs' substantive due process claims.

## QUALIFIED IMMUNITY

■ Defendant WCDHS presents an immunity defense in its reply in support of its motion for summary judgment. Defendant claims that it is entitled to immunity from suit since it was "acting sincerely and with a belief that [it] is doing right." *Wood v. Strickland*, 420 U.S. 308, 321, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). Defendant claims that it was required to act pursuant to OPAM and that it has no knowledge of OPAM ever having been found unconstitutional, and therefore it did not act in bad faith or with malice.

Defendant fails to note that *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) established an objective qualified immunity standard under which government officials are immune from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Defendant has not addressed whether the governing law was clearly established at the time of the alleged violations giving rise to plaintiffs' damages claims under 29 U.S.C. § 794. Accordingly, the Court declines to grant WCDHS summary judgment on plaintiffs' damages claims on the ground that WCDHS is entitled to qualified immunity.

## CONCLUSION

In accordance with the foregoing, it is hereby ORDERED that defendants' motions for summary judgment be GRANTED as to plaintiffs' substantive due process claims and DENIED with respect to plaintiffs' remaining claims.

IT IS SO ORDERED.